IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

HOLLIENNE HEATLEY,                )
                                  )
            Plaintiff,            )
                                  )
                                  )    CIV-08-40-HE
v.                                )
                                  )
MICHAEL J. ASTRUE,                )
  Commissioner of Social Security )
  Administration,                 )
                                  )
            Defendant.            )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying her application for disability insurance benefits under Title

II of the Social Security Act, 42 U.S.C. §§ 416(i), 423.   Defendant has answered the

Complaint and filed the administrative record (hereinafter TR___), and the parties have

briefed the issues.   The matter has been referred to the undersigned Magistrate Judge for

initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).   For the following reasons, it

is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff protectively filed her application on September 4, 2001, and alleged that she

became disabled on June 10, 2001. (TR 98-100, 126).  Plaintiff alleged disability due to

fibromyalgia and osteoarthritis. (TR 117).  Her application was administratively denied. (TR

1

37, 38).  At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Levine ("ALJ") on February 19, 2003. (TR 871-879).[1]  ALJ Levine issued a decision on March 5, 2004, in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act on or before June 30, 2003, the date on which she was last insured for the purpose of disability insurance benefits. (TR 42-48).  Plaintiff appealed this decision, and the Appeals Council vacated the ALJ's decision and remanded the matter for further administrative proceedings. (TR 78-80).  A second hearing *de novo* was conducted before ALJ Levine on December 14, 2005, at which Plaintiff, a medical expert ("ME"), Dr. Krishnamurthi, and a vocational expert ("VE") testified. (TR 880-918).

Subsequently, the ALJ issued a decision on November 21, 2006, in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 20-29).  The Appeals Council declined to review the ALJ's decision. (TR 10-13).  Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's November 21, 2006 determination.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied.  Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere

---

[1]A large portion of this transcript is missing from the record, and neither party has explained its absence or sought to supplement the record to include the missing portion.

conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520(b)-(f)(2008); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains

sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. ALJ's Decision

Following the requisite sequential evaluation procedure, the ALJ found at step one that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2003, and that she had not engaged in substantial gainful activity since June 10, 2001, her alleged disability onset date. (TR 22). At step two, the ALJ found that Plaintiff had severe impairments due to irritable bowel syndrome ("IBS"), obesity, gastroesophageal reflux disorder ("GERD"), sleep apnea, and arthritis. (TR 22-23). Considering the criteria of the agency's Listing of Impairments, the ALJ found at step three that Plaintiff's impairments did not meet the criteria for an impairment deemed disabling *per se* under Social Security Ruling ("SSR") 02-1p for obesity and under the listings for digestive system, musculoskeletal, mental, or inflammatory arthritis impairments. (TR 23-24). At step four, the ALJ reviewed the medical record and found that Plaintiff had the residual functional capacity ("RFC") to lift and carry up to ten pounds, stand and walk for two hours in an eight-hour workday, perform postural activities occasionally, and work in a low stress environment. (TR 25). Recognizing that Plaintiff had satisfied her burden of showing her inability to perform her previous jobs, the ALJ relied on the vocational testimony solicited at the second hearing with regard to the availability of jobs for an individual with Plaintiff's RFC for work. Based on the VE's testimony, the ALJ found that Plaintiff was not disabled within the meaning of the

4

Social Security Act because she retained the capacity to perform other jobs available in the economy, including the jobs of data examining clerk, accounting clerk, and reserve clerk and reviewer. (TR 27-28).

IV. Steps Two and Three - Fibromyalgia

Plaintiff contends that the ALJ erred in failing to find at step two that she had a severe impairment due to fibromyalgia. The ALJ found that during the relevant period of time between her alleged disability onset date, June 10, 2001, and June 30, 2003, when her insured status expired, Plaintiff had severe impairments due to IBS, obesity, GERD, sleep apnea, and arthritis. In discussing this finding, the ALJ noted that Plaintiff had been diagnosed with "fibromyalgia with multiple sequelae, significant problems including chronic muscle pain and fatigue at times and osteoarthritis with joint pain problems, significantly in her hands, particularly with prolonged use as well as her left ankle and knee with prolonged standing or walking." (TR 23). These diagnostic impressions appear in the report of the consultative physical examiner, Dr. Cates, concerning his examination of Plaintiff in December 2001. (TR 294). Dr. Cates' report reflects that his diagnostic impression of fibromyalgia was based on Plaintiff's subjective statement that she had been diagnosed with fibromyalgia causing chronic muscle pain and other conditions "she [felt] were related to her fibromyalgia [including] depression, [IBS], TMJ, and headaches." (TR 292). Plaintiff points to an office note dated October 31, 2001, by a treating physician, Dr. Dimick, in which Dr. Dimick only reports Plaintiff's statement that she had been diagnosed with fibromyalgia and osteoarthritis in February. (TR 269). Dr. Dimick's assessment in October 2001 was that Plaintiff had

5

"pain" based on an objective finding of a tender mid-epigastric area. (TR 269).   The physician recommended laboratory testing, including an abdominal ultrasound. (TR 269). On October 30, 2001, Dr. Dimick authored a letter addressed to the local disability office in which the physician stated that Plaintiff was "able to sit and stand," "able to walk," and "able to lift moderate objects." (TR 262).   Dr. Dimick further stated that Plaintiff could "hear, speak, and travel," appeared to be "a bright person in conversation," and that she had subjectively voiced "a lot of complaints of fatigue and pain" and "a lot of generalized malaise and joint pain with tension headaches and depressive symptoms" resulting in difficulty "adapting to a work situation well," although her "social interactions seem to be adequate." (TR 262-263).   Plaintiff does not point to other evidence in the record with respect to a diagnosis of or treatment for fibromyalgia.   Plaintiff's treating internist, Dr. Brewer, noted in July 2003 that Plaintiff provided a medical history of a diagnosis of "fibromyalgia-like" symptoms for which she was being treated by another physician. (TR 658).   There are no objective findings in this office note consistent with a diagnosis of fibromyalgia.

Nevertheless, the ALJ considered whether the medical evidence of Plaintiff's impairment due to "fibromyalgia" met or equaled the listing at 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.09.   Plaintiff incorrectly describes this listing as applying only to impairments due to systemic lupus erythematosus ("SLE").   The listing itself describes the agency's requirements for impairments due to inflammatory arthritis.   The ALJ appropriately considered whether Plaintiff's severe impairment, which the ALJ described as "fibromyalgia," and which has been diagnosed as "osteoarthritis" (TR 294), satisfied the

requirements of listing 14.09.

At the third step of the requisite sequential evaluation procedure, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. § 404.1520(d) (2008). Bowen v. Yuckert, 482 U.S. 137, 141 (1987). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." Id.

Plaintiff has not made a cogent argument in support of a finding that substantial evidence in the medical record shows an impairment due to "fibromyalgia" which met or equaled the listing at § 14.09.  This listing requires objective evidence of "signs on current physical examination of joint inflammation or deformity in two or more major joints resulting in inability to ambulate effectively or inability to perform fine and gross movements effectively...." or "[a]nkylosing spondylitis or other spondyloarthropathy, with diagnosis established by findings of unilateral or bilateral sacroiliitis...." or "[a]n impairment as described under the criteria in 14.02A [for SLE]" or "[i]nflammatory arthritis, with signs of peripheral joint inflammation on current examination...and...[s]ignificant documented constitutional symptoms and signs (e.g., fatigue, fever, malaise, weight loss), and ...[i]nvolvement of two or more organs/body symptoms ... or ... [i]nflammatory spondylitis or other inflammatory spondyloarthropathies...." 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.09). Plaintiff merely complains that the ALJ's decision "does not detail any of the Plaintiff's complaints of fibromyalgia to compare them with the requirements of the Listing ...."

7

Plaintiff's Brief, at 5.  Because the step three determination is based solely on medical evidence, this assertion of error is frivolous.  In any event, the record does not support such an argument, considering the findings on physical examinations of Plaintiff appearing in the record during the relevant period. (TR 642, 645-646, 767).

Plaintiff also complains that after reaching the step three determination, the ALJ "appears to abandon consideration of fibromyalgia, and does not relate any aspects of the Plaintiff's diagnosis of fibromyalgia to the limitations she finds for the Plaintiff's residual functional capacity." Plaintiff's Brief, at 5.  Contrary to this assertion, the ALJ's RFC finding at step four includes limitations in walking, standing, lifting, and postural movements that reflect consideration of the objective medical evidence and Plaintiff's subjective testimony with respect to functional limitations caused by her severe impairments.  At step four, the ALJ clearly did not "abandon" consideration of Plaintiff's severe impairment due to arthritis, and Plaintiff has not provided evidence to support additional functional limitations due to a separate "fibromyalgia" condition.  Thus, no error occurred in this regard.

V. <u>Step Two - Mental Impairment</u>

Plaintiff contends that the ALJ erred by not finding that Plaintiff had a severe mental impairment at step two.  Plaintiff concedes, however, that she denied being depressed.  At a consultative psychological evaluation conducted by Dr. Green in July 2003, Plaintiff stated that she was not depressed, that her family physician, Dr. Brewer, had prescribed anti-depressant medication which made her "nicer to be around" but that Dr. Brewer had not recommended treatment with a mental health professional. (TR 633).  Dr. Green observed

that Plaintiff's affect was appropriate, her mood was normal, she was pleasant and cooperative, she frequently laughed, her conversation was relevant, her thinking was clear, and there were no indications of perceptual distortion or memory impairment. (TR 634). Dr. Green noted that psychological testing showed Plaintiff had average intellectual functioning and a possible somatoform disorder. (TR 635-637). In Dr. Green's diagnostic assessment, Dr. Green reported Plaintiff exhibited a pain disorder with psychological factors and a general medical condition,[2] as well as a mathematics disorder. (TR 637). In connection with the psychological evaluation, Dr. Green completed a form concerning mental work-related functional abilities and found that Plaintiff had no functional limitations related to a mental impairment. (TR 638-639). Plaintiff does not point to other medical evidence in the record of a mental impairment. Dr. Green's report and attached assessment of functional limitations fully support the ALJ's step two finding that Plaintiff's depressive symptoms did not adversely affect her ability to work and therefore did not constitute a severe mental impairment.

VI. Obesity

Plaintiff contends that the ALJ failed to properly assess the effect of Plaintiff's obesity. Plaintiff refers to medical evidence in the record showing that her family doctor, Dr.

---

[2]This provisional diagnosis is a type of pain disorder which is a subcategory of somatoform disorders. See Amer. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 445, 462 (4th ed. 1994). A somatoform disorder is established by "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.07.

Brewer, recommended that she undergo gastroplasty surgery and that she did undergo gastroplasty surgery in an effort to lose weight. A large part of the Plaintiff's medical record is devoted to her treatment by various physicians for abdominal-related complaints and diagnoses, including IBS and GERD. (TR 749, 760, 762, 767). She was diagnosed as morbidly obese in March 2003 (TR 824), when Dr. Hanan, a surgeon, reported that she weighed 276 pounds and was 5'3" tall. (TR 824). Dr. Hanan recommended surgical treatment in the form of vertical banded gastroplasty, particularly in light of Plaintiff's co-existing conditions of degenerative arthritis, hypertension, and sleep apnea. (TR 825). The record contains a letter authored by Plaintiff's treating family physician, Dr. Brewer, directed to Plaintiff's insurance company seeking authorization for Plaintiff to undergo the gastroplasty operation. In this letter dated June 5, 2003, Dr. Brewer stated that in her opinion the operation "will result in weight loss, it will also result in the resolve of her sleep apnea," and it will "either greatly help[ ] or even resolve[ ]" her hypertension and GERD. (TR 659). Plaintiff's weight increased to over 300 pounds before she underwent the gastroplasty operation performed by Dr. Hanan in July 2004. (TR 847, 851).

Plaintiff fails to demonstrate how Dr. Brewer's letter supports her argument that the ALJ failed to properly evaluate Plaintiff's obesity. The ALJ found that Plaintiff had a severe impairment due to obesity. In the ALJ's decision, the ALJ considered the medical evidence concerning the effects of Plaintiff's obesity and found that her obesity had not "increased the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing" at step three. (TR 23). The ALJ further

noted that the consultative physical examiner, Dr. Cates, found in December 2001 that Plaintiff's ability to flex her back and knees was limited partially due to her weight. (TR 293). The ALJ's RFC finding includes standing and walking restrictions that reflect consideration and adoption of Dr. Cates' objective findings. The ALJ also properly considered the remainder of the consultative examiner's report showing that other range of motion testing of Plaintiff was normal and that Plaintiff did not exhibit any impairments in strength, manipulative abilities, gait, and ambulatory abilities. (TR 294).

Plaintiff underwent the gastroplasty operation in July 2004. Thus, the operation itself, or its potentially beneficial results as evidenced by Dr. Brewer's letter, could not have impacted the ALJ's assessment of Plaintiff's obesity during the relevant time period on or before June 30, 2003, when her insured status expired. Plaintiff does not point to evidence of functional limitations related to her obesity that were not considered by the ALJ in reaching an RFC determination. The ALJ satisfied the requirement that she evaluate Plaintiff's obesity. See Social Security Rulng 02-1P, 2000 WL 628049 ("Titles II and XVI: Evaluation of Obesity"). Consequently, this claim has no merit.

VII. Treating Physician's Opinion

Plaintiff contends that the ALJ erred by failing to expressly reject the opinion of her treating physician, Dr. Albert, concerning her functional capacity for work. The medical record contains the office notes of Dr. Albert, a rheumatology specialist, showing that Dr. Albert first treated Plaintiff in May 2003. (TR 645). Plaintiff reported to Dr. Albert that she had been diagnosed with carotid vasculitis, fibromyalgia, and osteoarthritis, and Dr. Albert

noted Plaintiff complained of pain in her fingers, ankles, knees, back, and neck. (TR 645). Plaintiff also complained of chronic fever but no neurologic symptoms such as severe headache or stroke. (TR 645). Dr. Albert conducted a physical examination, noting that Plaintiff's joints did not exhibit inflammatory synovitis, and recommended further diagnostic testing. (TR 645-646).

In a follow-up evaluation conducted on June 24, 2003, Dr. Albert noted that Plaintiff's diagnostic testing revealed an elevated c-reactive protein level, and Dr. Albert reported that Plaintiff might develop rheumatoid arthritis or other autoimmune disease as a result of her elevated c-reactive protein level in combination with her subjective symptoms of fever, arthralgia, and myalgia. (TR 642). Dr. Albert's provisional diagnosis was a possible undifferentiated connective tissue disease for which the physician prescribed medication, Plaquenil, to treat Plaintiff's symptoms. (TR 642). Plaintiff returned to Dr. Albert for follow-up treatment in October 2003, February 2004, and April 2004, although this treatment occurred well after the expiration of Plaintiff's insured status in June 2003. (TR 669-671). In October 2003, Dr. Albert noted a diagnosis of seronegative rheumatoid arthritis "with more physical findings and clearly abnormal [c-reactive protein] and [erythrocyte sedimentation rate]." (TR 671). Plaintiff's medication was changed to Methotrexate, and she was advised to continue her prescribed anti-inflammatory medication. (TR 671).

In July 2004, Dr. Albert completed an RFC assessment for Plaintiff which indicated that Plaintiff was unable to lift or carry 10 pounds, used a cane for walking, and must alternate sitting and standing to relieve pain or discomfort as a result of rheumatoid arthritis

affecting her shoulders, elbows, wrists, fingers, hips, knees, ankles, and feet. (TR 666-667).

Dr. Albert opined that Plaintiff could occasionally climb and crawl but could never kneel or

crouch due to severe knee arthritis. (TR 667).  Dr. Albert also opined that Plaintiff had a

limited ability to perform manipulative functions such as reaching, handling, and fingering

due to swelling, pain, and decreased range of motion in her wrists, elbows, hands, and

shoulders. (TR 668).  Dr. Albert further opined that Plaintiff should avoid intense heat and

intense cold. (TR 668).

    In June 2006, Dr. Albert authored a letter in which Dr. Albert stated that she had

treated Plaintiff beginning in May 2003 for undifferentiated connective tissue disease and

had followed her since that time "every few months." (TR 865).  Dr. Albert stated that

Plaintiff's condition is characterized by pain and swelling in multiple joints, fatigue, and

achiness. (TR 865).  In this June 2006 letter, Dr. Albert stated that in her opinion the

limitations contained in the RFC assessment she completed for Plaintiff in July 2004 "applied

since [she] first saw [Plaintiff] on May 9, 2003." (TR 865).

    The ALJ did not discuss the retroactive functional capacity assessment for Plaintiff

made by Dr. Albert.  The ALJ noted that Plaintiff had been diagnosed with seronegative

rheumatoid arthritis by Dr. Albert in October 2003 and that in January 2004 Plaintiff reported

improvement in her energy level and joints with the medication prescribed for this condition.

(TR 26).  However, the ALJ reasoned that the medical record of treatment of Plaintiff,

referring specifically to the records of Dr. Albert and Dr. Kindley, after Plaintiff's insured

status expired did not affect the ALJ's determination because "[a]n impairment, which did

not incapacitate her on or before June 30, 2003, could not be the basis for an allowance of disability insurance benefits." (TR 26).

"Generally, the ALJ must give controlling weight to a treating physician's well-supported opinion about the nature and severity of a claimant's impairments." Adams v. Chater, 93 F.3d 712, 714 (10th Cir. 1996).  Thus, the ALJ  "must first consider whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2).  "If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record....[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.   A treating physician's opinion may be rejected if it is inconsistent with other medical evidence.  Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994).  However, "[i]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ recognized that because Plaintiff's insured status expired on June 30, 2003, disability must be established on or before that date. See Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(per curiam)(to be entitled to receive disability insurance benefits plaintiff must show she was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of his insured status"); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

14

The ALJ addressed Dr. Albert's office notes of her treatment of Plaintiff and found, as reflected in Dr. Albert's notes, that Plaintiff was not diagnosed with rheumatoid arthritis until after the date she was last insured. (TR 24).    Although the ALJ did not express consideration of Dr. Albert's June 2006 letter indicating her July 2004 functional capacity assessment applied retroactively to the date she first saw Plaintiff in May 2003, the ALJ did not err as a matter of law in evaluating Dr. Albert's retrospective opinion.   A treating physician's retrospective opinion must be viewed with some caution. Hoffman v. Apfel, 62 F. Supp. 2d 1204, 1207 (D. Kan. 1204).   In this case, Dr. Albert only saw Plaintiff on two occasions shortly before Plaintiff's insured status expired.   Dr. Albert's clinical notes indicate that on those two office visits Plaintiff did not exhibit any objective signs of rheumatoid arthritis or other autoimmune disease, other than the elevated c-reactive protein level. (TR 642, 645).   However, based on Plaintiff's subjective symptoms and the elevated C-reactive protein level, Dr. Albert postulated in the June 2003 office note that Plaintiff could "over time overtly develop" one of these conditions.    In the July 2004 functional capacity assessment, Dr. Albert expressly based her findings of functional limitations on Plaintiff's "rheumatoid arthritis affecting" several joints. (TR 667).   Because Dr. Albert's diagnosis of rheumatoid arthritis was made after the date that Plaintiff was last insured for purposes of disability insurance benefits, the ALJ did not err in failing to give controlling or other weight to Dr. Albert's July 2004 functional capacity assessment.   Moreover, given the provisional nature of Dr. Albert's diagnostic assessment in June 2003, the ALJ did not err in failing to find that Plaintiff had a severe impairment due to rheumatoid arthritis or an autoimmune

disease prior to the date her insured status expired.

VIII. <u>RFC</u>

Plaintiff contends that the ALJ did not properly assess the credibility of Plaintiff's allegation of disabling pain. To find that a claimant's pain is disabling, the "pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." <u>Brown v. Bowen</u>, 801 F.2d 361, 362-363 (10th Cir. 1986)(internal quotation omitted). "Subjective complaints of pain must be evaluated in light of plaintiff's credibility and the medical evidence." <u>Ellison v. Secretary of Health & Human Servs.</u>, 929 F.2d 534, 537 (10th Cir. 1990). In <u>Hargis v. Sullivan</u>, 945 F.2d 1482 (10th Cir .1991), the Tenth Circuit Court of Appeals recognized certain factors as relevant to the ALJ's credibility determination at step four. These factors include: "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence." <u>Id.</u> at 1489. <u>See</u> <u>Luna v. Bowen</u>, 834 F.2d 161, 165-166 (10th Cir. 1987).

Although Plaintiff points to certain subjective statements and other evidence in the record that she believes should have been considered, the ALJ's decision reflects appropriate consideration of the <u>Hargis</u> factors (TR 25-27) in reaching the credibility determination. Plaintiff is asking the Court to reweigh the evidence and reach a different conclusion on the

issue of her credibility, and this the Court cannot do under the limited judicial review of the Commissioner's decision allowed by statute.   There is substantial evidence in the record to support the ALJ's RFC finding, and no error occurred with respect to this determination.  In light of the VE's testimony at the second administrative hearing in response to a hypothetical inquiry encompassing the RFC finding, there is also substantial evidence in the record to support the ALJ's step five determination.  Therefore, the Commissioner's decision should be affirmed.


RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____ December 31st _____, 2008, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____11th_____ day of _____December_____, 2008.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE